UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED SPECIALTY INSURANCE COMPANY, a Delaware Corporation,<br><br>Plaintiff,<br>v.<br><br>CLAY JONAK, an Oregon Resident; ROGER ISON, an Oregon resident,<br><br>Defendants. | Case No. 3:17-cv-0330-AC<br><br>FINDINGS AND RECOMMENDATION |

ACOSTA, Magistrate Judge:

This lawsuit is about a pollution-liability insurance policy. Defendants Clay Jonak and Roger Ison (collectively, "Defendants") leased riparian land adjacent to, and submerged lands underlying, the Columbia River. Defendants leased the submerged lands from proposed intervenor the State of Oregon ("the State") through the Department of State Lands ("DSL"). As a condition of the lease, Defendants had to obtain and maintain pollution-liability insurance. Defendants obtained such a policy from plaintiff United Specialty Insurance Company ("USIC"). The State notified Defendants of its intent to pursue claims for pollution-related cleanup and remediation. USIC then initiated this lawsuit, seeking various declaratory judgments regarding limitations on coverage and rescission of

the policy at issue. Defendants have not appeared, and apparently have entered into a settlement agreement conceding that the Policy was void from inception. The State now moves to intervene in this lawsuit to protect its interest in recovering on claims made under the Policy. In briefing requested by the court after oral argument, the State also sought dismissal of this action based on Eleventh Amendment sovereign immunity. The court should grant the State's motion to intervene, but deny the State's request for dismissal based on sovereign immunity.

*Background*

This lawsuit arises from an insurance policy ("the Policy") insuring land adjacent to and submerged land underlying the Columbia River, in Rainier, Oregon ("the Property") against pollution-related claims. (Compl. (ECF No. 1) ¶¶ 4, 8.) Defendants Clay Jonak and Roger Ison (collectively, "Defendants") lease the Property from the proposed intervenor the State of Oregon ("the State") through the DSL. (*Id.* ¶ 5.) The lease agreement between the State and Defendants required Defendants to acquire and maintain pollution-liability insurance. (Mot. to Intervene (ECF No. 14), Ex. 1 at 11, 17–19.) Defendants obtained the Policy in January 2016. (Compl. ¶ 8.)

According to the State, Defendants "have assembled the largest collection of derelict vessels in the State of Oregon." (Compl. Ex. G at 1.) Three vessels, the *Tug Granby*, *Tug Earnest*, and *HV Newell*, are sunk in the Columbia River on or near the Property. (*Id.* ¶¶ 55, 68.) The *HV Newell* sunk in 2015; the *Tug Granby* and *Tug Earnest* sunk in August and September of 2016. (*Id.* ¶¶ 54, 67.) On November 1, 2016, the State sent a Notice of Claims ("the Notice") to Defendants, alleging property damage to the Property and the natural resources of the State. (*Id.* ¶¶ 63–64 & Ex. G.) The Notice seeks damages for "property damage, clean-up costs and environmental response costs" relating only to the *HV Newell*, *Tug Granby*, and *Tug Earnest*. (*Id.* ¶ 65 & Ex. G.) The State sent

a notice of termination under its lease agreement, which the Director of the DSL approved on January 6, 2017. (Mot. to Intervene at 4.) The State and Defendants entered into a settlement agreement ("the DSL settlement") agreeing to remove all vessels (except for the *River Queen*, which is apparently immobile), remove all structures, hazardous materials, solid waste, and personal property, and vacate the Property by June 1, 2017. (*Id.*) DSL then entered a final order incorporating the terms of the DSL Settlement between the State and Defendants. (*Id.* Ex. 2.) The State alleges that Defendants violated the DSL Settlement by failing to remove the *HV Newell*, *Tug Granby*, and *Tug Earnest*, and by leaving structures, material, and personal property on the Property which may contain hazardous waste. (*Id.* at 4–5.) The State further alleges that Defendants' conduct and breach of the DSL Settlement trigger coverage under the Policy. (*Id.* at 5.)

After receiving the Notice on December 15, 2016, plaintiff United Specialty Insurance Company ("USIC") became aware of Defendants' involvement in other litigation and administrative proceedings about pollution on the Property. (Compl. ¶¶ 69–70.) USIC also contends that Defendants misrepresented or omitted material information regarding pollution on the Property and compliance with environmental regulations when applying for the Policy. (*Id.* ¶¶ 26–30, 99–103.) In its complaint, USIC seeks a declaratory judgment that is has no obligations under the Policy to defend or indemnify Defendants and rescission, avoidance, or reformation of the Policy. (*Id.* at 40–41.) USIC asserts twenty causes of action justifying limited coverage or no coverage at all, relying on the language of the Policy and Defendants' alleged material misrepresentations and omissions under the Policy. (*Id.* ¶¶ 72–150.)

USIC served Defendants in March 2017. (ECF Nos. 6 & 7.) In May, 2017, USIC voluntarily dismissed its claim for breach of contract based on "misrepresentation/fraud and concealment."

(ECF No. 8.) Defendants have not appeared. USIC moved for, and Judge Brown entered, an order of default on USIC's remaining claims. (ECF Nos. 9, 11.) USIC then filed a motion for default judgment which is currently under advisement before Judge Brown. (ECF No. 12–13.) The State filed its motion to intervene on June 16, 2017, which is currently before the court. (ECF No. 14.) USIC opposes the motion, contending the matter has reached a settlement. (ECF No. 17.) The settlement between USIC and Defendants stipulates that the Policy was void from inception. (Decl. of Eliot M. Harris ("Harris Decl.") (ECF No. 18) Ex. A ¶ 9.) USIC and Defendants further agree to rescission and voidance of the Policy. (*Id.* ¶ 15.) Defendants also release USIC from any obligation to defend or indemnify them against claims under the Policy. (*Id.*)

Following oral argument, the court ordered USIC and the State to submit supplemental briefs regarding "whether the state is a necessary or proper party to this action." (ECF No. 23.) The parties complied with the court's order. (ECF Nos. 28, 29.) In its supplemental briefing, the state argued — for the first time — that, because it is a necessary party and is immune to suit in federal court, the court must dismiss this lawsuit. (ECF No. 28, at 7–8.)

*Legal Standard*

I. Intervention as a matter of right.

Federal Rule of Civil Procedure ("Rule") 24 controls whether a party has the right to intervene in an action. On a timely motion, Rule 24(a)(2) gives the right to intervene to a party who: "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Additionally, the Ninth Circuit held that intervention is proper when (1) the motion is timely; (2) the applicant asserts

an interest in the underlying subject matter of the litigation; (3) the applicant's interest in the underlying subject matter would be prejudiced if intervention is not granted; and (4) the applicant's interest would be inadequately represented if there is no intervention. *United States v. Oregon*, 839 F.2d 635, 637 (9th Cir.1988) (quoting *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir.1983)). Courts construe Rule 24 "broadly in favor of applicants for intervention." *Id.* (quoting *United States v. Stringfellow*, 783 F.2d 821 (9th Cir. 1986).

II. Permissive intervention.

A party may also seek to intervene with the court's permission, under Rule 24(b). "A court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *San Jose Mercury News, Inc. v. U.S. Dist. Court - N. Dist (San Jose)*, 187 F.3d 1096, 1100 (9th Cir. 1999). Whether a party seeks to intervene as a matter of right or with the court's permission, Rule 24(c) requires an applicant for intervention to attach to its motion to intervene a pleading setting out the claim or defense upon which intervention is sought. Courts nonetheless allow intervention without an attached pleading where the court is "otherwise apprised of the grounds for the motion." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 996 F.2d 470, 474 (9th Cir. 1992).

III. Diversity-of-citizenship jurisdiction.

Federal courts have original jurisdiction over matters where complete diversity of citizenship exists between the parties. 28 USC § 1332. Complete diversity means each plaintiff is a citizen of a state different from each defendant and the amount in controversy exceeds the statutory minimum, currently $75,000. *Id.*

## IV. Necessary parties.

Rule 19 requires joinder of non-parties under certain circumstances. In relevant part, the Rule provides that:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Whether a joinder is required presents a mixed question of state and federal law. *Provident Tradesmens Bank v. Patterson*, 390 U.S. 105, 125 n.22 (1968). In a diversity case, state law governs a person's underlying rights and interests. *Id.* Whether those rights and interests require joinder is an issue of federal law. *Id.*

If the absent party is a necessary party but cannot be joined, the court then determines whether the lawsuit may "in equity and good conscience" proceed without the absent party. FED. R. CIV. P. 19(b). The court considers the following non-exclusive factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
> (A) protective provisions in the judgment;
>
> (B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.*

*Analysis*

The State seeks intervention as a matter of right under Rule 24(a)(2) or, in the alternative, with the court's permission under Rule 24(b). It argues that its claim against Defendants, as set out in the Notice, triggers coverage under the Policy for clean-up and remediation costs. Because the relief USIC seeks would prejudice the State's ability to recover its damages from Defendants, the State seeks to intervene in this lawsuit to protect its interest in the validity of the Policy. The State further contends that Defendants do not adequately represent its interests because Defendants do not represent the State's interest in protecting the State's waterways. In supplemental briefing, the State also argues that the State is a necessary party which cannot be joined due to sovereign immunity. USIC opposes intervention. Its primary argument is that the State's motion is untimely because USIC and Defendants have already resolved their dispute. USIC also argues that the State has no interest in the Policy because the parties agree that the Policy was void from inception.

This Findings and Recommendation will first address whether the State is a necessary or proper party to this lawsuit, and whether sovereign immunity requires dismissal of this lawsuit. Then, this Findings and Recommendation will discuss the merits of the State's motion to intervene.

I. Necessary party.

The state first contends it is a necessary party because the State has a legally protected

interest in the validity of the Policy. The lease agreement required Defendants to secure pollution insurance to protect the State's interest in the Property. The State, because of its public-trust interest, has an ongoing obligation to remediate any pollution damage to the Property and the Columbia River. Thus, the State concludes that it has a legally protected interest in the validity of the Policy because the Policy is a potential source of funds to fulfill its obligations in regards to the Property. USIC contends that the State lacks a legally protected interest in the Policy because its rights are derivative of Defendants' interest in the Policy, which Defendants have disclaimed. Nonetheless, despite — and in part because of — USIC's contention, the State is a necessary party.

The State is a necessary party because it has a legally protected interest in the Policy as a source of funds to fulfill the State's obligations regarding the Property. As both parties note, the Ninth Circuit has not decided whether a third-party claimant has a legally protected interest in insurance-coverage litigation. District courts in the Ninth Circuit have reached varying conclusions. *Navigators Ins. Co. v. K & O Contracting, Inc.*, No. 3:12-cv-1324-ST, 2013 WL 1194722, at *3 (D. Or. Jan. 10, 2013) (collecting cases). A court in this district has held that a non-party to an insurance contract has a legally protected interest in the potential proceeds of a claim under an insurance policy. *Id.* at 4. There, the potential interrelation between the insurance-coverage litigation and underlying claim against the insured was unclear. *Id.* The *Navigators* court nonetheless held that the non-party claimant had a legally protectable interest in the policy as a potential source of funds to satisfy a judgment in his claim against the insured. *Id.*

The court's reasoning in *Navigators* is persuasive. Although a third-party claimant may not be a categorically necessary party in insurance-coverage litigation, the circumstances of this case show that the State has a legally protected interest in the validity of the Policy. Not only is the Policy

a potential source of funds to satisfy any judgment the State may obtain against Defendants, Defendants obtained the Policy to protect the State's interests in the Property, as required by the Lease. (Mot. to Intervene, Ex. 1 at 11, 17–19.) The State's interest in the policy as a source of funds to satisfy any judgment against Defendants and to fulfill its public-trust obligations also stems from the lease agreement agreement with Defendants. Thus, the State is a necessary party to this lawsuit because of its legally protected interest in the subject matter of this lawsuit.

USIC contends that another case from this district, holding that an insurance agent is not a necessary party to an insurance-coverage lawsuit, suggests that the State is not a necessary party. *Rediger v. Country Mutual Insurance Co.*, No. 6:16-cv-2263-AA, 2017 WL 1375182, at *3–4 (D. Or. Apr. 14, 2017). *Rediger* is inapposite. An insurance agent does not have any interest recovering under the disputed policy. The agent's asserted interest was in "potentially adverse factual findings." *Id.* at *4. Here, the State's interest goes beyond adverse factual findings, extending instead to the validity of an insurance policy obtained to protect the State's interests. Thus, *Rediger* does not require a contrary conclusion.

II. Sovereign immunity.

The State also contends that it cannot be joined in this lawsuit because of Eleventh Amendment sovereign immunity. The State, however, waived sovereign immunity by filing a motion to intervene for purposes other than asserting itself as a necessary party or preserving a state court's right to adjudicate the subject matter. A state may waive sovereign immunity by "mak[ing] a clear declaration that is intents to submit itself to federal jurisdiction." *Demshki v. Monteith*, 255 F.3d 986, 989 (9th Cir. 2001) (citation and internal quotation marks omitted). Appearance to defend in federal court is insufficient to waive Eleventh Amendment sovereign immunity, so long as the

state raises the issue "early in the proceedings to provide fair warning to the plaintiff." *Id.* (citation omitted). Where a state voluntarily invokes the judicial power of the federal courts, it waives Eleventh Amendment sovereign immunity. *Lapides v. Bd. of Regents*, 535 U.S 613, 621–23 (2002) (removing case to federal court is waiver of sovereign immunity); *Clark v. Barnard*, 108 U.S. 436, 447 (1883) (intervening in interpleader case is a waiver of Eleventh Amendment sovereign immunity). Courts have found that intervention does not waive sovereign immunity where the intervention so limited as to not constitute a waiver. *Missouri v. Flake*, 290 U.S. 18, 20–21 (1933) (intervention to reserve state-court jurisdiction over a probate case did not waive sovereign immunity).

The State's motion to intervene showed a clear intent to invoke federal jurisdiction. Its motion sought to participate in the case. (Mot. to Intervene at 2.) Nothing in the State's motion mentions Eleventh Amendment sovereign immunity or suggests a limited purpose for intervention. Nor did counsel for the State mention Eleventh Amendment sovereign immunity at oral argument. The issue arose only after the court requested additional briefing on whether the State is a necessary or proper party. The State's decision to intervene is most similar to the state's intervention in an interpleader case in *Clark*, where the Court held that the state's "appearance in a court of the United States would be a voluntary submission to its jurisdiction." *Clark*, 108 U.S. at 883. In both cases, the states appeared voluntarily to protect their interests in a federal proceeding, without asserting sovereign immunity or otherwise suggesting a limitation on their appearances. *See id.* Thus, the State's motion to intervene was a voluntary invocation of the judicial power of the United States, waiving Eleventh Amendment sovereign immunity.

Because the State is a necessary party and has waived its Eleventh Amendment sovereign

immunity, the court should grant the State's motion to intervene. If the court concludes that the State is not a necessary party, the court should nonetheless grant the State's motion to dismiss for the reasons detailed below.

II. Intervention as a matter of right.

*A. Timeliness.*

The State argues its motion to intervene was timely because little has occurred in the lawsuit and neither party would incur substantial prejudice. USIC disagrees, asserting that this matter is effectively resolved because of the USIC Settlement and that further litigation would prejudice both parties. When determining whether a motion to intervene is timely, courts consider three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *San Jose*, 187 F.3d at 1101 (citation omitted). The State's motion is timely under the three factors.

1. Stage of the proceeding.

The State argues its motion is timely under the first factor because this case remains procedurally in its early stages. USIC contends that the State's motion to intervene is untimely because the court entered an order of default. USIC also argues that the USIC Settlement ended any controversy between the parties regarding whether the Policy was valid, effectively resolving this case.

First, an order of default does not resolve the case. In most cases, a party seeking a default judgment must move for a default judgment. FED. R. CIV. P. 55(b)(2). The Ninth Circuit disfavors default judgments as a general matter, favoring a decision on the merits "whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (citation omitted). Courts had

discretion regarding whether to enter a default judgment, and may decline to enter a default judgment if the court questions the merits of the complaint. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (affirming a district court's denial of a default judgment where the underlying claims lacked merit). Indeed, Judge Brown has instructed USIC to produce documentation substantiating its claim for relief, as a prerequisite for a default judgment. (Harris Decl. Ex. B.)

Second, the procedural posture of the case weighs in favor of allowing intervention. The "stage of the proceedings" factor encompasses the extent of litigation and degree to which the court has engaged in the legal and factual issues. *See, e.g. League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1303 (9th Cir. 1997) (factor "weighed heavily against allowing intervention" after the court had ruled on a motion for summary judgment and motion to dismiss); *Nw. Forest Resource Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (factor favored intervention when motion filed before defendants filed an answer and before any proceedings took place). Here, the "stage in the proceedings" factor favors allowing intervention. The order of default, the only proceedings to date, is not a substantive ruling on the legal or factual issues presented in the complaint. Although this lawsuit may be close to resolution because of the USIC Settlement, the parties have not engaged in the extensive litigation present in *League of United Latin American Citizens*.

    2. Prejudice to other parties.

The State contends that neither Defendants nor USIC will be prejudiced by the State's intervention. Here, the State points to the lack of litigation or discovery and to USIC's notice of the State's claim against Defendants under the Policy. USIC responds that both parties would suffer prejudice because the State's intervention might frustrate the USIC Settlement. Defendants might particularly suffer prejudice because they agreed in the USIC Settlement to indemnify and defend

USIC. (Harris Decl., Ex. A ¶ 20.) The risk of disturbing a settlement supports a finding of prejudice. *See United States v. Oregon*, 913 F.2d 576, 588–89 (9th Cir. 1990) (prejudicial to allow intervention when a case neared settlement after nearly twenty years of litigation); *Orange County v. Air Cal.*, 799 F.2d 535, 538 (9th Cir. 1986) (prejudicial to allow intervention after parties reached a settlement following five years of litigation). This case, however, has been pending for a much shorter time that the cases in *Oregon* and *Air California*. Moreover, the existence of a settlement agreement is a lesser impediment to intervention where applicants for intervention "had no means of knowing that the proposed settlements [were] contrary to their interests." *United States v. Alisal Water Corp.*, 370 F.3d 915, 922 (9th Cir. 2004) (citing *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995), *abrogated on other grounds by Wilderness Society v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011)). Thus, although the prejudice factor weighs against intervention, it does so only slightly.

3. Reason for and length of the delay.

"A party seeking to intervene must act as soon as [it] knows or has reason to know that [its] interests might be adversely affected by the outcome of the litigation." *Oregon*, 913 F.2d at 589 (citation and internal quotation marks omitted). For example, in a lawsuit where a secured creditor sought to intervene in a lawsuit by the government against the debtor, the secured creditor first had constructive notice of the government's adverse interests when the government moved to seek civil penalties from the debtor. *United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004). The *Alisal* court rejected the creditor's attempt to use the date of actual notice of the government's adverse interest. *Id.* Accordingly, the appropriate consideration in this case is when the State had constructive notice that the outcome of this lawsuit might impair its interest.

Here, the State had constructive notice that its interests might be adversely affected by the outcome if this lawsuit when the complaint was filed. The parties agree that the State made a claim under the Policy in November 2016. (Mot. at 8; Compl. ¶ 63–70.) USIC's request for rescission would plainly affect the State's asserted interest in asserting a claim covered by the Policy. Thus, the State's delay lasted from the filing of the complaint until it sought to intervene — approximately three-and-a-half months. But until the Defendants failed to appear and argue in favor of maintaining coverage under the Policy, the State could not have known that Defendants were not litigating in favor of the Policy. The State first received constructive notice of Defendants' failure to argue in favor of coverage when USIC moved for an order of default on May 5, 2017. (ECF No. 9.) The State moved to intervene approximately one month later, on June 16, 2017. (ECF No. 14.) The State attributes the delay to DSL obtaining authorization from the State to file a lawsuit triggering coverage. (Mot. at 5, 8.) The State's delay between learning of the potential adverse effects of this litigation and seeking intervention was therefore relatively brief and adequately explained by the circumstances.

In sum, the three-factor timeliness analysis supports allowing intervention. Although the motion to intervene may prejudice the parties, the State applied to intervene early in the proceedings with minimal and excusable delay. The court should conclude that the State's application to intervene was timely, and proceed to the merits of the State's motion.

*B. Significant protectable interest*

The State asserts two interests as sufficient to justify intervention. An interest is significant and protectable if it is "protected under some law" and a relationship exists between the interest and the plaintiff's claims. *So. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (quoting

*United States v. City of Los Angeles*, 307 F.3d 794 (9th Cir. 2002)). First, the State argues it has a protectable interest in the Policy. Its protectable interest, the state contends, arises from the lease's requirement that Defendants obtain pollution-liability insurance to protect the state's proprietary and public-trust interest in the leased property and the Columbia River in general. Second, the State contends this litigation implicates its sovereign interest in protecting and preserving natural resources.

Courts are reluctant to recognize contingent or speculative economic interests as a basis for intervention as a matter of right. *See Alisal*, 370 F.3d at 920 (holding that potential impairment of a creditor's ability to collect on a judgment is insufficient to support intervention). A state's sovereign interest in protecting its natural resources, in contrast, has a strong interest in representing the public interest in a lawsuit between private citizens. *People of the State of Cal. v. United States*, 180 F.2d at 601–02 (9th Cir. 1950) (when determining the right to intervention, a private party's commercial interests "are certainly not as great of that of the State as parens patriae in the maintenance of the welfare of its citizens"). In *People of the State of California*, the underlying lawsuit arose from a dispute between the United States, a public water district, and two private users of water regarding water rights in California. *Id.* at 597–98. California sought to intervene both to represent the public interest and to protect its proprietary interest in the water rights at issue. *Id.* at 598–99. The Ninth Circuit held that California had a right to intervene to represent the public interest of California's residents in a dispute between private users of water and out-of-state interests.[1] *Id.* at 601–02.

---

[1] Although the United States is not a private user of water, it sought to divert the water at issue into Nevada, an interest adverse to California. *People of the State of Cal.*, 180 F.2d at 601.

Here, the State's strongest interest in intervention is to protect the public interest in the subject matter of this lawsuit. As in *State of California*, the underlying lawsuit implicates the public interest. USIC's proposed remedy might substantially limit the available funds to remediate and clean up pollution on the Property, including pollution in the Columbia River. The State has a constitutional obligation to manage state lands — including the submerged lands underlying the Columbia River — in the public interest. OR. CONST. Art. VIII sec. 5; *see also Morse v. Or. Div. of State Lands*, 34 Or. App. 853, 860 (1978) ("[A]ll submerged and submersible lands are subject to the paramount responsibility of the state to preserve and protect the public interest."). The State's significant interest in protecting the public interest in the Columbia River and its underlying land exists independently of the State's economic interest in its claim under the Policy. *People of the State of Cal.*, 180 F.2d at 601 (right to intervene to protect public interest is equal to right to intervene based on proprietary interest).

Finally, USIC's contention that the USIC Settlement vitiates the State's interest in the litigation is incorrect. Even if the parties agree that the Policy is void, the State retains an interest in preserving the public interests in the submerged lands covered by the Policy. Additionally, the court has yet to resolve the validity of the Policy, and the State presents factual and legal arguments contrary to USIC's position. (Reply (ECF No. 20), at 3–7; Decl. of Patricia Fox (ECF No. 21), Exs. 1–26.) Courts must consider "all well-pleaded, nonconclusory allegations in the motion to intervene ... and declarations supporting the motion as true absent sham, frivolity or other objections." *Berg*, 268 F.3d at 820. Although the USIC Settlement shows a negotiated agreement that the Policy is void, the existence of a settlement does nor foreclose intervention to challenge that settlement. *See Alisal*, 370 F.3d at 922 (the existence of a settlement agreement does not categorically foreclose

intervention to protect an interest jeopardized by the settlement agreement).

Accordingly, the State asserts a significant protectable interest in the maintenance in the public interest of the submerged lands covered by the Policy. It is protected under Oregon's constitution and common law, and relates to the subject matter of this lawsuit because the dispute implicates the funds available to remediate pollution of those submerged lands.

*C. Impairment or impedance of the State's interest.*

The State argues that the disposition of this litigation might impair its ability to protect its interest. Courts determine whether an applicant for intervention's interests would be impaired or impeded by determining whether the outcome of an action would practically affect the applicant's interests. *Sw. Center for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (citing FED. R. CIV. P. 24 advisory committee's notes). Rescission of the Policy could impair the State's ability to obtain funds for remediation of polluted public-trust resources. USIC's argument to the contrary rests on its incorrect assertion that the State has no interest in this litigation because the parties have agreed that the Policy was void from inception. Accordingly, the disposition of this lawsuit may impair or impede the State's interest in maintaining in the public interest the submerged lands covered by the Policy.

*D. Representation of the State's interests.*

The final criteria for intervention is the inadequacy of representation by existing parties. The State argues Defendants' failure to appear and defend this lawsuit satisfies this criteria. The State is correct. USIS again relies on its incorrect contention that the USIC Settlement eliminates the State's interest in this lawsuit. Instead, the USIC Settlement supports the State's argument. The USIC Settlement strongly suggests that Defendants do not share the State's interest in ensuring

coverage of any necessary remediation of pollution covered by the Policy. The State's unique public-trust interest is unrepresented in this lawsuit, and would likely remain unrepresented even if Defendant had appeared and defended in this lawsuit.

In sum, the State demonstrates a basis for intervention as a matter of right. The court should grant the State's motion.

IV. Permissive intervention.

If the court concludes that intervention as a matter of right would be inappropriate, the State alternatively moves for permissive intervention. The court has discretion to allow permissive intervention where an applicant for intervention's "claim or defense share[s] a common question of law or fact with the main action and . . . the intervention will not unduly delay or prejudice the adjudication of the original parties' rights." *Murphy Co. v. Trump*, No. 1:17-CV-00285-CL, 2017 WL 979097, at *5 (D. Or. Mar. 14, 2017) (citation and internal quotation marks omitted). For the reasons discussed above, the State's claims against Defendants shares common questions of law and fact with this lawsuit. While the State's intervention might cause some prejudice and delay to the parties, such prejudice or delay would not be undue. The State's interest in protecting the public interest justifies any resulting delay or prejudice.

*Conclusion*

The court should GRANT the State's motion to intervene. (ECF No. 14.)

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due September 11, 2017. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 28th day of August, 2017.

JOHN V. ACOSTA
United States Magistrate Judge